UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LEAH SONNENBERG,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

                                  /

Case No. 1:12-cv-154
Hon. Hugh W. Brenneman, Jr.

## OPINION

        Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying her claim for disability insurance benefits (DIB) and supplemental security income (SSI).

        Plaintiff was born on May 16, 1987 (AR 146).[1] She alleged a disability onset date of October 1, 2007 (AR 11). Plaintiff graduated from high school and had previous employment as a cashier, fast food crew member, and stocker at a grocery store (AR 151, 156). Plaintiff identified her disabling conditions as: major depressive disorder; generalized anxiety disorder; attention deficit disorder, neurologically-based cognitive disorder; post-traumatic stress disorder; extremely impaired delayed memory; extremely slow processing speed; schizotypal personality disorder; severely impaired verbal memory; and avoidant/dependant personality disorder (AR 148). Plaintiff stated that due to these conditions: she is rejected and mocked; people become frustrated and angry with her; she will never be able to drive; and she speaks and moves much slower than most people (AR

---

[1] Citations to the administrative record will be referenced as (AR "page #").

150). The administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on July 16, 2010 (AR 9-16). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

### I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. § 404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

3

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007), citing *Bailey v. Secretary of Health and Human Servs.*, No. 90-3265, 1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fifth step of the evaluation. The ALJ initially found that plaintiff has not engaged in substantial gainful activity since the alleged onset date of October 1, 2007 and that she met the insured status requirements under the Act through June 30, 2010 (AR 11). Second, the ALJ found that plaintiff has the following severe impairments: a cognitive disorder; an anxiety disorder; and a personality disorder (AR 11). At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (AR 12). Specifically, plaintiff did not meet the requirements of Listings 12.02 (organic mental disorders), 12.06 (anxiety related disorders) or 12.08 (personality disorders) (AR 12).

The ALJ decided at the fourth step that:

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: only simple, repetitive and routine tasks; with only occasional contact with supervisors and the general public and occasional changes in the work setting.

(AR 13). The ALJ also found that plaintiff was unable to perform any of her past relevant work (AR 13).

4

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled jobs at all exertional levels in the regional economy (defined as the lower peninsula of Michigan) (AR 15-16). Specifically, plaintiff could perform the following unskilled, light jobs in the regional economy: laundry room worker (6,000 jobs); horticultural/greenhouse worker (1,200 jobs); and cleaner (3rd shift) (6,000 jobs) (AR 16). The ALJ also found that plaintiff could perform additional jobs which were available at other exertional levels (AR 16). Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from October 1, 2007 (the alleged onset date) through July 16, 2010 (the date of the decision) (AR 16).

### III. ANALYSIS

Plaintiff raised one issue on appeal:

The Social Security Administration failed to give proper weight to the only treating physician's opinions that plaintiff is not capable of being employed in any full time employment positions because of her cognitive disorder, anxiety disorder and a personality disorder.

Plaintiff contends that the ALJ failed to properly evaluate the opinions of Gary Burkhart, Ph.D. A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. § 404.1527(c)(2) ("Generally, we give more weight to

5

opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations"). Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013); 20 C.F.R. §§ 404.1527(c)(2) and § 416.927(c)(2). An ALJ is not bound by the conclusory statements of doctors, particularly where the statements are unsupported by detailed objective criteria and documentation. *Buxton*, 246 F.3d at 773; *Cohen v. Secretary of Health & Human Services*, 964 F.2d 524, 528 (6th Cir. 1992).

In summary, the opinions of a treating physician "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

Dr. Burkhart stated that he had treated plaintiff since July 12, 2007 (AR 438). The doctor prepared a neuropsychological assessment report, based on an examination conducted on

6

July 12th and 25th, 2007 (AR 356-60). Based on his examination, Dr. Burkhart's assessment set forth the following "summary and conclusions":

> Currently, Leah Sonnenberg is estimated to be functioning in the average range of intelligence with similar verbal and performance abilities. Of note however, is her significantly slow processing speed (time it takes her to process new information). Her delayed memory, particularly for verbal information is severely impaired. Her language abilities, visuo-spatial abilities, academic abilities, and attention abilities are [sic] appear intact. Her executive functions are intact.
>
> The overall pattern of the neuropsychological assessment is consistent with Leah's lifelong struggle with learning. Her adjustment to her limitations continues to be a struggle. Of some concern is the report of poor sleep and her continued difficulty with bladder control. This might suggest that further neurological evaluation would be appropriate, perhaps with a sleep study and other review to exclude the possibility of noctumal seizures.

(AR 358-59).

> The doctor's relevant opinions appear in his Recommendations 3, 4 and 5:
>
> 3) In a work setting, Leah will struggle to learn new information, particularly information presented verbally. A job Leah enjoys will make learning new material somewhat less of a chore for her. In addition, her work should be in a protected setting, due to her poor memory and speed of processing information: Leah is not able to respond quickly or in novel ways to new situations.
>
> 4) Leah will remember things best that she has seen: written notes, pictures showing instructions (rather than verbal instructions), being shown where something is (rather than told) will help her to best utilize her memory.
>
> 5) Based on these results Leah should not drive a motor vehicle. Leah's poor processing speed does not allow her to make rapid judgments or scan multiple stimuli at once. If she wants to contest this view she should undergo an evaluation at the Mary Free Bed Rehabilitation Hospital driving program.

(AR 360).

Dr. Burkhart translated these conclusions and recommendations in a letter dated July 25, 2007, in which he set forth the following work restrictions:

To Whom It May Concern:

I have completed a neuropsychological evaluation on Leah Sonnenberg. Ms. Sonnenberg has a neurologically based cognitive disorder.

In a work setting, Ms. Sonnenberg will struggle to learn new information, particularly information presented verbally. Her work should be in a protected setting: Ms. Sonnenberg is not able to respond quickly or in novel ways to new situations.

Ms. Sonnenberg will remember things best that she has seen; written notes, pictures showing instructions (rather than verbal instructions), being shown where something is (rather than told) will help her to best utilize her memory.

In addition, due to her condition, Ms. Sonnenberg will perform best when not under stress. This may include working part-time, which would allow her adequate time to process events and thus be less stressed.

(AR 429). In a subsequent "to whom it may concern" letter dated September 4, 2007, Dr. Burkhart stated, "[i]t is my strong recommendation that Ms. Sonnenberg only work three days a week due to her medical condition" (AR 441).

On October 20, 2008, Dr. Burkhart performed another neuropsychological assessment report, which was requested "to assist with possible guardianship needs" (AR 430). It was reported that while plaintiff "was doing better from a psychological standpoint," she "still gives the impression of someone younger than her stated age [of 21 years]" (AR 430). Her psychological profile was relatively stable with her July 2007 results, with the following exceptions: a significant improvement in her delayed memory skills; a significant drop in her visual/spatial skills; and improvement in her attention (AR 431). In addition, Dr. Burkhart found that plaintiff's executive functions "reflect an area of significant impairment," which "will result in poor insight, poor

8

judgment and difficulties with organizing her activities" (AR 432). With respect to job related skills, the doctor found that:

> She continues to have a slowed processing speed and will do best with tasks that are overlearned.  Her best performance will come on tasks that do not have a deadline, and a decreased work schedule to allow her time to decompress between the expectations of having to perform on the job.

(AR 432).  Dr. Burkhart also concluded: that it would be helpful to have someone to help plaintiff make major decisions about health care or finances; that plaintiff should be involved in the decisions "especially if she is able to express reasoning in a credible manner"; that she should have extensive time (i.e., one day) to think about important decision; and that she presents "as immature for her age" (AR 432).  In his recommendations, the doctor noted that due to her immaturity, plaintiff "will likely be gullible and susceptible to be taken advantage of due to her naivety" and that she will do best in a structured setting where others can have her best interests in mind (AR 432).  Once again, the doctor cautioned against plaintiff driving a motor vehicle unless evaluated by a driving rehabilitation program (AR 432).

Dr. Burkhart prepared another neuropsychological re-assessment report on April 16, 2010, (AR 433).   This report was an updated assessment prepared for a judge "for guardianship purposes" (AR 433).  In this report, the doctor found that the prior assessment reports had merit and that plaintiff's test results reflected "a stable pattern of cognitive strengths and weaknesses" (AR 435).

On June 14, 2010, Dr. Burkhart prepared a medical provider's assessment of ability to do mental work-related activities, which stated the following opinions.  With respect to "making occupational adjustments," the doctor found that plaintiff had extreme limitations  (relating to co-workers, dealing with the public, using judgment, dealing with work stresses and maintaining

9

attention/concentration) and marked limitations (following work rules, interacting with supervisors, and functioning independently) (AR 436). With respect to the ability to make performance adjustments, the doctor felt that plaintiff had extreme limitations in understanding, remembering and carrying out "complex job instructions" and marked limitations in understanding, remembering and carrying out even "simple job instructions" (AR 436-37). With respect to making personal/social adjustments, the doctor felt that plaintiff had extreme limitations in relating predictably in social situations, and marked limitations in maintaining personal appearance, behaving in an emotionally stable manner, and demonstrating reliability (AR 437). With respect to functional limitations, the doctor opined that plaintiff had extreme limitations in maintaining social functioning and concentration, persistence and pace, and that she had marked limitations in her activities of daily living (AR 437). The doctor supported his findings by referring to his assessments and noting that a birth injury is suspected in plaintiff's condition (AR 436-37). Based on these limitations, Dr. Burkhart felt that plaintiff would be absent from work more than three times a month and that she would not able to manage benefits (AR 438).

The ALJ evaluated Dr. Burkhart's opinions as follows:

> As for the opinion evidence, the claimant submitted the evaluation of Dr. Burkhart (Exhibit 15F). This was completed in June 2010. Before assessing it, one should note that in July 2007 Dr. Burkhart only recommended avoiding verbal instruction, work in a protected setting and no driving (Exhibit 3F/5). He summarized that in a letter describing low stress, protected work, which he noted "may" mean part time work (Exhibit 12F). Two months later, he stiffened that recommendation a bit, saying he "strongly recommended" part time work - but seemed to be focused on the current job in the fast food restaurant (Exhibit 16F).
>
> The June 2010 assessment puts the claimant in the marked or extreme categories for every area of psychological function. This includes even in matters of personal care or appearance (Exhibit 15F/2), which is inconsistent with all the other evidence. I do not find Dr. Burkhart's conclusions to be consistent with the remaining evidence. The claimant would have to be incapable of caring for her own

>basic needs or ever leaving the house on her own, much less working part time and testifying without assistance at her hearing, for her to be as impaired as this assessment suggests.
>
>A more accurate assessment of the claimant's psychological status is found in the State consultative evaluator's report of June 2008 (Exhibits 8F; 9F). These findings are incorporated into this decision and reflected in the residual functional capacity, where the marked impairment in concentration, persistence and pace supports a capacity for simple work, routinely performed, in a low stress environment.

(AR 14-15).

While the ALJ found that Dr. Burkhart's opinions were inconsistent with all of the other evidence, his decision does not cite medical evidence from other treaters. Rather the ALJ relied on a Mental Residual Functional Capacity (RFC) Assessment and a Psychiatric Review Technique Form (PRTF) prepared by a non-examining agency psychologist, John Gallagher, Ed.D., on June 25, 2008 (AR 385-402). Dr. Gallagher's mental RFC did not include a narrative functional capacity assessment (as required by the form) but simply referred to the PRTF (AR 387), which in turn cited Dr. Burkhart's report of July 2007. It appears that the last two sentences of the "consultant's notes" on the PRTF are intended to be the narrative functional capacity assessment:

>She is limited to work that does not involve rapid visual scanning and does not involve a good deal of verbal memory. Otherwise she is able to follow simple instructions, respond to supervision, adjust to routine changes and make simple decisions and judgments.

(AR 401).

Based on this record, the ALJ has not articulated good reasons for rejecting the opinions of plaintiff's treating psychologist, Dr. Burkhart. *See Wilson*, 378 F.3d at 545. The ALJ did not explain medical evidence from other treaters which was inconsistent with Dr. Burkhart's opinions. In addition, while the ALJ stated that he found Dr. Gallagher's conclusions were "more

11

accurate," the ALJ did not address Gallagher's restriction that plaintiff engage in "work that does not involve rapid visual scanning and does not involve a good deal of verbal memory." These restrictions referred to by Dr. Gallagher are consistent with Dr. Burkhart's opinion that plaintiff's poor processing speed does not allow her to make rapid judgments and scan multiple stimuli at once, and that plaintiff remembers best with pictures showing instructions rather than verbal instructions. Accordingly, this matter will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate Dr. Burkhart's opinions.

### IV.  CONCLUSION

The ALJ's decision is not supported by substantial evidence. Accordingly, the Commissioner's decision will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate Dr. Burkhart's opinions. A judgment consistent with this opinion shall be issued forthwith.


Dated:  September 20, 2013                    /s/ Hugh W. Brenneman, Jr.
                                              HUGH W. BRENNEMAN, JR.
                                              United States Magistrate Judge